## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Peter Bepler, *et al.*,

Plaintiffs,

v.

Daniel Matthew Vorobek, *et al.*,

Defendants.

C.A. No. 1:17-cv-01876-TSC

## DEFENDANT VOORHEES'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO DISMISS BEPLER'S FIRST AMENDED COMPLAINT

Defendant Daniel Matthew Vorobek ("Voorhees"),[1] through his undersigned counsel, respectfully submits this Reply in further support of his Motion to Dismiss all counts against him in the First Amended Complaint filed by Plaintiff Peter Bepler ("Bepler" or "Plaintiff").

## INTRODUCTION

In an unsuccessful attempt to salvage his time-barred claims, Bepler spends a considerable portion of his Opposition arguing that the discovery rule, the lulling doctrine, and fraudulent concealment toll his claims. However, Bepler fails to allege any specific fact that he has discovered about the alleged "fraudulent" transactions that he did not know when he first learned of the transactions in 2011 and 2013. He resorts to asserting spurious and conclusory allegations that Voorhees and Dentons (Anybill's outside counsel) colluded to lull him into inaction. These conclusory allegations of fraudulent concealment fail to meet the plausibility standard, let alone the heightened pleading standard of Rule 9(b).

---

[1]    Bepler named Defendants Daniel Matthew Voorhees and Christopher John Dorobek using their marital surname: Vorobek. However, for the purpose of this Reply, Defendants will be referenced using their pre-marital surnames: Voorhees and Dorobek.

In addition, Bepler has failed to show in his Opposition how his substantive claims survive Voorhees's Rule 12(b)(6) motion.  For instance, he counters Voorhees's argument that his fraud-based claims (including his breach of fiduciary duty claim) are not pled with particularity and in many instances are improperly alleged on "information and belief," by simply citing to other paragraphs in his Amended Complaint that do not include the phrase "on information and belief." This is not enough to save Bepler's conclusory claims from dismissal.

## ARGUMENT

### I.      THE STATUTE OF LIMITATIONS BARS BEPLER'S CLAIMS

#### A.  The Court Should Not Wait Until Summary Judgment to Dismiss Bepler's Claims

Bepler argues that this Court must wait until summary judgment to dismiss his claims on statute of limitations grounds.  He is incorrect.  It is well established that "a motion to dismiss may be granted on the basis that the action is time-barred . . . when it appears from the face of the complaint that the relevant statute of limitations bars the action."  *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985); *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005) ("A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint.").

Accordingly, from the face of the Amended Complaint and construing the facts in a light most favorable to Bepler, Bepler's claims are conclusively barred by D.C.'s three-year statute of limitations for his common law claims and RICO's four-year statute of limitations.  Bepler's arguments to the contrary are unavailing.

### B. The Discovery Rule Does Not Apply to Bepler's Common Law or RICO Claims

Bepler tries to rescue his claims from the fatal statute of limitations problem by invoking the discovery rule.  The discovery rule, however, is inapplicable to Bepler's claims because the allegations on the face of the Amended Complaint establish that he had actual and inquiry notice of the alleged transfers when the transactions occurred and certainly before the second set of transactions, which Bepler describes as the "Second Fraudulent Transfers."  For instance, Bepler alleges that when he learned of the transactions in 2011 and raised questions about them at that time, Voorhees explained that he had been using the accounts for Anybill's business but "did not explain the purported business reasons for the transfers," that the Company's outside counsel stated that they would prepare a report but did not, and that Voorhees offered a purported "*mea culpa*."  (Am. Compl. ¶¶ 22-23, 31, 36-38).  Bepler goes on to allege that he had access to the Anybill's bank account records and discovered transactions in 2013 and that he contacted legal counsel at that time.  *Id.* ¶ 49.  He does not allege any fact that he has learned since 2011 regarding those transactions nor any fact regarding the 2013 transactions that he did not already know in 2013.  As such, he cannot argue that the statutes of limitations were tolled until his investigation uncovered wrongdoing at "some point during the [Section] 220 litigation."  (Plaintiff's Memorandum of Points and Authorities in Opposition to the Motions to Dismiss of Defendant[s] Daniel Matthew Voorhees and Anybill Financial Services Inc. (ECF No. 46) ("Opp.") at 15).

The discovery rule cannot save a plaintiff from his own "ordinary negligence" in failing to detect or pursue a claim.  *Diamond v. Davis*, 680 A.2d 364, 375-76 (D.C. 1996); *see also Hendel v. World Plan Executive Council,* 705 A.2d 656, 661 (D.C. 1997) ("The discovery rule does not, however, give the plaintiff carte blanche to defer legal action indefinitely if [he] knows or should know that [he] may have suffered injury and that the defendant may have caused [him] harm.").

Here, Bepler argues that he failed to discover any purported wrongdoing until sometime during the Section 220 litigation (filed on December 7, 2015).[2]  (Opp. at 19).  Yet, he does not allege any fact that he learned in that proceeding.  Even if he did allege any new fact that he learned, Bepler alleges no facts that support his claim that he was prevented from discovering the transactions with the exercise of ordinary diligence.  Bepler did not bring his Section 220 claim until 2 years after discovering the 2013 transactions.  As a result, Bepler "cannot use his own lack of diligence as a crutch; if information indicating wrongdoing was at his fingertips but he neglected to pursue a meaningful investigation, he nevertheless possesses inquiry notice."  *Matijktw v. Strauss*, No. 2008CA004996, 2013 WL 5033010, at *7 (D.C. Super. July 30, 2013) (citing *In re Delaney*, 819 A.2d 968, 982 (D.C. 2003)).  Consequently, the discovery rule does not apply here.

### C.  The Superior Court Action Did Not Toll the Statutes of Limitation

Bepler further urges this Court to adopt a Delaware rule that filing a Section 220 action tolls the statute of limitations during the pendency of the Section 220 litigation.  (Opp. at 13).  However, his argument is without any support.

As explained in Voorhees's Motion to Dismiss, the Section 220 action in the Superior Court of the District of Columbia establishes Bepler's lack of diligence, rather than excusing it.  Bepler alleges that one purpose of that action "was to discover whether Mr. Voorhees had caused transfers of Anybill funds to accounts owned and/or controlled by himself or Mr. Dorobek."  (Am. Compl. ¶ 75).  Yet, Bepler filed the action <u>two years</u> after the purported 2013 transfers, and he chose not to bring the action in Delaware, which provides by statute for a summary proceeding for shareholders or directors seeking books and records in the Delaware Court of Chancery.  8 Del.

---

[2]    The Section 220 litigation is Bepler's action in the Superior Court of the District of Columbia, which was filed on December 7, 2015, to obtain the books and records of Anybill and its subsidiaries, pursuant to Delaware Code § 220.

Code § 220(c).  If he was entitled to them, Bepler could have had whatever records he claims to have needed within weeks of filing the action.  Consequently, there is no merit to Bepler's argument that the Section 220 action somehow tolled the statute of limitations on Bepler's claims.

> **D.  Bepler Fails to Plead Fraudulent Concealment with Particularity to Toll the Statute of Limitations**

Bepler argues that both the lulling doctrine and the doctrine of fraudulent concealment toll the statute of limitations.  (Opp. at 17-18).  The allegations in the Amended Complaint are insufficient as a matter of law to support a claim for fraudulent concealment or the application of the lulling doctrine.  District of Columbia courts recognize the lulling doctrine "when the defendant's fraudulent concealment or misconduct lulled the plaintiff into allowing the filing deadline to pass." *See Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 34 (D.D.C. 2008).  Yet, Bepler fails to contest, and thus concedes, that as a requirement of the lulling doctrine, fraudulent concealment must be pleaded with particularity under Rule 9(b).  *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994) ("[A]llegations of fraudulent concealment, which toll the statute of limitations, must meet the requirements of Fed. R. Civ. P. 9(b).").  "General and conclusory allegations [of fraudulent concealment] are not sufficient." *Bergen v. Rothschild*, 648 F. Supp. 582, 587-88 (D.D.C. 1986).

As set forth in Voorhees' Motion to Dismiss, Bepler's fraudulent concealment claim is based purely on conclusory statements upon "information and belief." (*See, e.g.*, Am. Compl. ¶¶ 40, 52, 60).  Bepler seeks to cure that pleading defect by merely citing to threadbare recitations of the elements of his claims that do not contain the phrase "upon information and belief."  (Opp. at 18 (citing Am. Compl. ¶¶ 139-40, 148)).  Such conclusory and formulaic recitations of claims cannot support Bepler's claim that Voorhees fraudulently concealed the nature of the alleged transfers.

Further, Bepler fails to satisfy the elements necessary to establish fraudulent concealment. He tries to save his claims by offering the bald assertion without a good faith basis that "he believes" that Voorhees agreed with Anybill's outside counsel to "conceal the wrongful nature of Mr. Voorhees' conduct" by not delivering a memorandum detailing an allegedly promised investigation.  (Opp. at 16).  Moreover, Bepler's claim that the investigation did not occur are contradicted by his own Complaint, which alleges that he participated in meetings with company counsel as part of that investigation.  (Am. Compl. ¶¶ 30-37).  Such baseless and conclusory allegations asserting fraud do not meet the required pleading standard.  They also demonstrate that if Bepler believed company counsel did not adequately investigate in 2011 he knew the facts supporting that belief then.  He knew in 2011 that he did not receive the report that he claims was forthcoming.  Indeed, Bepler does not even allege that as a director of Anybill, he ever followed up with the company's outside counsel requesting information about the investigation or the memorandum.  Finally, Bepler argues that he was purportedly stymied in 2014 and 2015 from receiving Anybill's financial records. (Opp. at 18.)  But again, he does not identify the record that was withheld from him that supports his claims.  Accordingly, Bepler's fraudulent concealment allegations fail to state a claim as a matter of law.

## II.     THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.  Bepler Fails to Sufficiently Plead the Elements of Fraud

Bepler attempts to cure the defects on the face of his Amended Complaint by making new statements in his Opposition regarding the alleged fraud.  (Opp. ¶ 26-27).  He now argues, without support to any allegation in the Amended Complaint, that each transfer was itself a false statement by Voorhees, the acceptance and initiation of transfer was an act of reliance on the part of Anybill, and the completion injury.  (Opp. ¶ 26).  It is well settled, however, that a plaintiff cannot use his

Opposition to a motion to dismiss to try to cure the deficiencies in his Pleadings. *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 169 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal citations and quotation marks omitted)); *Badwal v. Bd. of Trustees of Univ. of D.C.*, 139 F. Supp. 3d 295, 314 (D.D.C. 2015) ("In reviewing a motion to dismiss under Rule 12(b)(6), the Court must look only to the facts alleged on the face of the complaint . . . ."). Bepler also argues that Voorhees and his agents purportedly made other false statements on which he relied. There are no facts alleged that support any of these claims. Again, he cites only to formulaic recitations of the elements of his claims made in paragraphs 137 to 232 of the Amended Complaint. (Opp. at 25-26, 28-29, 32). Such recitations fail to meet the pleading requirement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Bepler also attempts to counter Voorhees's argument that his deficient pleading of fraud on "information and belief" by citing to conclusory allegations in the Amended Complaint where the phrase "upon information and belief" is not included. (Opp. at 27-30 (citing Am. Compl. ¶¶ 100, 108, 116-17, 138, 154, 157, 162-63, 165-66, 194)).) Bepler may not rely on "legal conclusion[s] couched as . . . factual allegations" to save his fraud claim. *See Iqbal*, 556 U.S. at 678. He still fails to cite anywhere in the Amended Complaint that the "necessary information lies within . . . [Voorhees's] control" and . . . failed to articulate a statement of the facts upon which [his] allegations are based." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994).

Finally, in support of his argument that he justifiably relied upon Voorhees's purported false and misleading statements, Bepler cites allegations in his Amended Complaint that are nothing more than mere conclusions, such as, "Mr. Bepler, and/or other officers, directors, and

shareholders of the Corporation reasonably relied on the truth of these false and misleading explanations," Opp. at 29-30 (quoting Am. Compl. ¶ 138-40), and "Mr. Voorhees's proffered explanations for the First Fraudulent Transfers were false and misleading . . . . Mr. Bepler reasonably relied on the truth of these false and misleading explanations."  (Opp. at 30 (quoting Am. Compl. ¶ 147-48)).  Such allegations are not sufficient as a matter of law.  They do not include any of the facts necessary to meet the plausibility or particularity pleading requirements.

### B.  Bepler Fails to Plead Facts Sufficiently to Support a Claim for a Breach of Fiduciary Duty

Bepler counters Voorhees's argument that his breach of fiduciary duty claim fails to meet the Rule 9(b) standard by arguing that even though "the various transfers have been given the defined name 'First Fraudulent Transfers' and 'Second Fraudulent Transfers' for convenience that does not automatically render them assertions of fraud wherever they appear."[3]  (Opp. at 25). Bepler contradicts himself by calling the transfers "fraudulent transfers" in his Amended Complaint and in other parts of his Opposition.  (*See* Opp. at 28.)  Yet, at the same time, he argues that his fiduciary duty claim is not based upon fraud and should not be held to Rule 9(b)'s heighted pleading standard.  Bepler's argument fails as a matter of law.

### C.  Bepler Concedes There Is No Cause of Action for "Misappropriation" Under D.C. or Delaware Law

In his Opposition, Bepler contends that he properly pled a cause of action for "misappropriation of corporation assets" or, alternatively, "breach of fiduciary duties by

---

[3]     In Section II of his Opposition, Bepler appears to argue that, with regards to his breach of fiduciary duty claim, at the motion to dismiss stage, Voorhees bears the burden of showing that any "self-dealing" transaction was "entirely fair." (Opp. at 8-9).  The "entire fairness" standard is inapplicable to this case as it applies to actions taken by the board of directors of a company.  *See e.g.*, *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1162 (Del. 1995) ("Where . . . the presumption of the business judgment rule has been rebutted, the board of directors' action is examined under the entire fairness standard").

misappropriation"—two causes of action that do not appear on the face of Bepler's Amended
Complaint. (Am. Compl. ¶¶ 153-160). While claims for misappropriation of corporate assets and
breach of fiduciary duty may be brought in the same action, each claim must be "separate and
distinct" and "supported by different evidence." *See Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln
New Town Corp.*, 944 A.2d 1055, 1070 (D.C. 2008). Accordingly, Bepler's misappropriation
claim must be dismissed because it fails to state a cause of action and impermissibly attempts to
re-characterize his deficient breach of fiduciary duty claim.

### D. Bepler's Conversion Claim Fails as a Matter of Law

Bepler attempts to cure his conversion claim by misstating the conclusory allegations in
his Amended Complaint. (Opp. at 31-32). He argues that by merely identifying the dollar amounts
of amounts transferred between accounts in paragraphs 23 and 42, he adequately pled that those
amounts were converted funds. As noted in Voorhees's Motion to Dismiss, amounts transferred
between the accounts are exactly the type of fund that cannot support a claim for conversion
because it is fungible, commingled cash. *See McNamara v. Picken*, 950 F. Supp. 2d 193, 195
(D.D.C. 2013). Bepler also fails to address Voorhees's argument that money cannot be the basis
for a conversion claim under D.C. law. Therefore, it should be deemed conceded. *Stephenson v.
Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("[W]hen a plaintiff files a response to a motion to
dismiss but fails to address certain arguments made by the defendant, the court may treat those
arguments as conceded."). Despite conceding that his conversion claim cannot stand under D.C.
law, he argues incorrectly that he properly pleaded the existence of "identifiable funds" as required
by *Equity Grp. v. Painewebber Inc.*, 839 F. Supp. 930, 933 (D.D.C. 1993). Yet, that is not the
case.

Furthermore, in responding to Voorhees's argument that nowhere in the Amended Complaint does Bepler identify the purported amounts that were transferred—let alone converted—Bepler cites to his conclusory allegations set forth in the paragraphs 161-168 of the Amended Complaint.  (Opp. at 32).  Those allegations do not identify the amounts that he alleges were transferred, and, therefore, converted, to Voorhees-related accounts.  Further, Bepler cites to his purely conclusory statements, which were based on information and belief, that any funds transferred were not Voorhees's property.  Yet again, the fact that Bepler cites to several paragraphs of his Amended Complaint that do not include the phrase "upon information and belief" does not cure the deficiency in his claim.  (*See, e.g.*, Am. Compl. ¶ 158 ("Mr. Voorhees took possession of and used the funds transferred in the Second Fraudulent Transfers for his own purposes."); *id.* ¶ 166 ("Voorhees exercised unlawful ownership, dominion, or control over the Corporation's funds.")).  As a matter of law, these allegations do not support a conversion claim. *See Bank of America Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 223 (S.D.N.Y. 2005) ("Plaintiffs' conclusory allegation that they have a legal right and an immediate superior right of possession to assets currently being held by Defendant . . . is, without more, insufficient to survive a motion to dismiss." (internal citation and quotation omitted)).  Because Bepler fails to sufficiently plead the elements of conversion, his claim must be dismissed.

### E.  Bepler Concedes that "Minority Shareholder Oppression" Is Not a Cause of Action Under D.C. or Delaware Law

Bepler fails to address Voorhees's argument that his claim for "minority shareholder oppression" is not recognized by either D.C. or Delaware law.  As a result, Bepler's purported "minority shareholder oppression" claim (Count VII) should be dismissed.  *See Stephenson*, 223 F. Supp. 2d at 121 ("[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded.").

**F.  Bepler's Civil RICO Claims (Counts XII and XIII) Fail as a Matter of Law**

Bepler purports to abandon his RICO claims–made directly–conceding that he failed to plead a legally cognizable injury "in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); (Opp. at 35 n.10).  The remaining derivative claim that Bepler leaves behind fails to state facts that give rise to a RICO claim, and Bepler's arguments in opposition do not save his claims.

Bepler attempts to cure his deficient RICO claim by quoting conclusory allegations from the First Amended Complaint that merely recite the elements of a RICO claim.  (Opp. at 33-35). However, "[w]here the alleged predicate acts involve mail or wire fraud . . . plaintiff must satisfy the heightened pleading standard of Rule 9(b)." *See Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 108 (D.D.C. 2015).  As noted above, Rule 9(b) requires that the "pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *United States v. Kellogg Brown & Root Servs*, 800 F. Supp. 2d 143, 152 (D.D.C. 2011) (internal quotation marks and citation omitted). Allegations merely including that "[e]ach of the First Fraudulent Transfers and the Second Fraudulent Transfers were part of common schemes and constituted a violation of the Wire Fraud Statute," without more, cannot support a claim for RICO.  (Opp. at 34 (quoting Am. Compl. ¶ 103)).

Bepler argues that he sufficiently pled "a pattern of racketeering activity" by stating that there were "nine acts" of "racketeering activity," but offers no case law in support of his argument. (Opp. at 33-34).  Notably, he ignores the binding D.C. Circuit case law requiring plaintiffs to allege more than merely a single scheme, a single injury, and a few victims.  *See Western Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001) (affirming dismissal of a

RICO claim where plaintiff alleged a single scheme of fraudulent bookkeeping entries, resulting in the diminished value of a single partnership); *Harpole Architects, P.C. v. Barlow,* 668 F. Supp. 2d 68, 75 (D.D.C. 2009) (dismissing employer's RICO claim against former bookkeeper alleged to have stolen funds from employer over a three-year time period).  Bepler merely alleged a set of transactions that were part of the same set of events.  (Am. Compl. ¶ 23, 42).  He cannot simply cite to the separate dates of the particular purported transactions in support of his argument that he pled a pattern of racketeering activity.

Accordingly, even accepting the allegations as true and construing the facts in a light most favorable to Bepler, these facts do not give rise to a RICO claim.

### G. Bepler Fails to Properly Plead an Agreement Necessary to State a Conspiracy Claim

There is no dispute that civil conspiracy claims must be dismissed where there is "no evidence of an unlawful agreement."  *Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001).  In his Opposition, Bepler continues to rely on the mere fact that Voorhees and Dorobek were married and joint-account holders at the time of the alleged transfers to show a purported agreement.  (Opp. at 36).  He quotes paragraph 122 of the Amended Complaint to allege that he pleaded an agreement between Voorhees and Dorobek.  (Am. Compl. ¶ 122 ("Mr. Dorobek conspired with Mr. Voorhees, and possibly others. . . .")).  And, he emphasizes his conclusory allegation that "the transfers of tens of millions of dollars into these personal accounts, at the direction of Mr. Voorhees, were *so obvious* that Mr. Dorobek must have been aware of them and approved them."  (Opp. at 36 (quoting Am. Compl. ¶ 107) (emphasis added)).

Such conclusory allegations and arguments are insufficient as a matter of law.  *McCreary v. Health*, No. Civ. A. 04-0623 PLF, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005) ("To survive a motion to dismiss, a plaintiff must set forth more than just conclusory allegations of an

agreement."). Even assuming Dorobek had knowledge of the transfers, mere knowledge is not enough to form an agreement. *See United States v. Mellen*, 393 F.3d 175, 184 (D.C. Cir. 2004). As such, his conspiracy claims must be dismissed.

### H. Bepler's Argument that He May Bring both Direct and Derivative Claims Against Voorhees Is Not Rooted in D.C. or Delaware Law

Bepler contends that "there is a growing trend to permit pleading direct and derivative claims in the same suit," citing American Law Institute ("ALI") corporate governance sections and law review articles for support. (Opp. at 37-38). He argues, without citing any legal authority, that although the elements of his actions should be decided under Delaware law, this Court is not obligated to follow Delaware's pleading requirements as to matters of corporate governance.[4] Bepler's argument is not supported by D.C. or Delaware law. Because the injury alleged by Bepler arises only after and because of the alleged damage done to Anybill, Bepler's direct claims fail as a matter of law.

### I. Bepler Should Not Be Permitted to Amend His Complaint Because His Second Amended Complaint Fails to Cure the Deficiencies in His First Amended Complaint

Bepler contends that in the event this Court grants the motion to dismiss for failure to plead with particularity, "whether for the claims related to fraud *or* for a defect in pleading fraudulent concealment to toll the statute of limitations," the Court should grant him leave to amend his Complaint. (Opp. at 39-40). However, for the reasons articulated in Voorhees's Response to

---

[4]     Voorhees notes that in other parts of his Opposition, Bepler advocates this Court to follow Delaware's pleading requirements when they are in his favor, e.g., to preserve his breach of fiduciary duty and misappropriation claims. (Opp. at 31 ("This court, following the law of Delaware regarding these claims, may follow Delaware's lead and simply re-classify the claim for misappropriation as a claim for breach of fiduciary duty by misappropriation.")).

Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 40) granting Bepler leave to file another Amended Complaint will not cure the defects in his claims.

## CONCLUSION

For the above-stated reasons, Defendant Voorhees respectfully requests that the Court grant his Motion to Dismiss.

Dated: February 3, 2018

/s/ George Kostolampros
George Kostolampros (DC Bar # 980827)
Moxila A. Upadhyaya (DC Bar # 494373)
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
202-344-4000 Telephone
202-344-8300 Facsimile
GKostolampros@Venable.com
MAUpadhyaya@Venable.com

*Counsel for Defendant Daniel M. Voorhees*