**EXHIBIT 2**

**Filed**
**D.C. Superior Court**
**06/08/2017 13:04PM**
**Clerk of the Court**

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Peter Bepler
1830 15th Street NW
Washington, D.C.  20009,

and

Peter Bepler
Derivatively on behalf of nominal defendant
Anybill Financial Services Inc.,
                              *Plaintiffs*,

                    v.                              Civil Action No.  2017 CA 003949 B

Daniel Matthew Vorobek                    Jury Trial Demanded
A.K.A. Daniel Matthew Voorhees
2750 32nd Street NW
Washington, D.C.  20008

                    *Defendant,*

and

Christopher John Vorobek
A.K.A. Christopher John Dorobek
2750 32nd Street NW
Washington, D.C.  20008

                    *Defendant,*

and

Anybill Financial Services Inc.
1801 Pennsylvania Avenue NW, Suite 700
Washington, D.C.  20006,

                    *Nominal Defendant,*

and

Anybill Financial Services Inc.

                    *Defendant.*

## VERIFIED SHAREHOLDER DERIVATIVE AND DIRECT COMPLAINT

### NATURE OF THE ACTION

1.   Anybill Financial Services Inc. ("Anybill" or the "Corporation") is a privately owned corporation, incorporated in Delaware, but with its headquarters and principal place of business in the District of Columbia at 1801 Pennsylvania Avenue NW, Washington, D.C. 20006.

2.   Anybill is a financial services company.  Its business is to safeguard its clients' funds and to automate accounts payable and related payment processing for those clients.

3.   Anybill's Chief Executive Officer is known as Daniel Matthew Voorhees.

4.   Although Mr. Voorhees signs corporate documents, operates Anybill, and oversees millions of dollars in client funds as "Daniel Matthew Voorhees," in 2011 he legally changed his name to Daniel Matthew Vorobek.

5.   Upon information and belief, "Daniel Matthew Vorobek" is the legal name of Anybill's CEO Daniel Matthew Voorhees.  Because he refers to himself as "Daniel Matthew Voorhees" and sometimes "D. Matthew Voorhees" or simply "Matthew Voorhees," he will be referred to herein as "Mr. Voorhees."

6.   The Corporation's Board of Directors currently consists of three directors, who are all co-founders of the Corporation:  Defendant Mr. Voorhees, his step-father and long-time business partner Patrick Roche, and Plaintiff Peter Bepler.

7.   Upon information and belief, Mr. Voorhees's spouse is Christopher John Vorobek.  In 2011, Mr. Vorobek changed his name from "Christopher John Dorobek" to "Christopher John Vorobek."  Because Christopher John Vorobek still uses the name "Dorobek," including on certain bank accounts, he will be referred to herein as "Mr. Dorobek."

8.   In this action, Mr. Bepler seeks to recover damages, both directly and derivatively, from Mr. Voorhees, for fraud, misappropriation of funds, conversion of funds, breach of fiduciary duties, minority shareholder oppression, and conspiracy.  Mr. Bepler seeks to recover damages from Mr. Dorobek derivatively for conspiracy.  Mr. Bepler also seeks to recover damages from

Anybill directly for the wrongful discharge of Mr. Bepler from his role as President of the Corporation, in violation of public policy.

## PARTIES

9.   Plaintiff Peter Bepler is a citizen of the District of Columbia.

10. Mr. Bepler, a co-founder of Defendant Anybill, is, and at all relevant times has been, the owner of shares of Anybill's common stock.

11. Mr. Bepler is a member of Defendant Anybill's three-person Board of Directors.

12. Defendant Anybill is a corporation organized in Delaware but having its headquarters and principal place of business at 1801 Pennsylvania Avenue NW, Washington, D.C. 20006.

13. Defendant Voorhees is Anybill's CEO and a member of Anybill's Board of Directors.

14. Defendant Dorobek is, upon information and belief, Mr. Voorhees's spouse.

## JURISDICTION AND VENUE

15. This Court has original jurisdiction over this matter pursuant to D.C. Code § 11-921.

16. The events giving rise to this lawsuit occurred primarily in the District of Columbia.

17. Venue is proper in the District of Columbia because Mr. Bepler lives and works in the District of Columbia, Mr. Voorhees lives and works in the District of Columbia, Mr. Dorobek lives in the District of Columbia, Anybill maintains its headquarters in the District of Columbia, and the acts giving rise to the causes of action herein occurred primarily in the District of Columbia.

## ANYBILL BOARD OF DIRECTORS

18. In early October 2010, the Anybill Board of Directors was made up of six members: Defendant CEO Mr. Voorhees; Patrick Roche, Mr. Voorhees's step-father and an Anybill employee; Plaintiff Mr. Bepler; and three independent directors who were investors in the Corporation.

19. However, at a Board meeting held in October 2010, the three independent investor-members of the Board resigned, leaving only Messers Voorhees, Roche, and Bepler—and no independent directors.

## MR. VOORHEES'S FIRST FRAUDULENT TRANSFERS

20. In September 2011, several employees of Anybill approached Mr. Bepler with concerns about the financial management and bank-account activity at the Corporation over the preceding two years.

21. These employees were concerned that a review of the Corporation's bank-account activity appeared to show that over a nearly two-year period, funds had been transferred between the Corporation's accounts—including accounts containing funds Anybill had been given by its clients, to be held solely to make payments on behalf of those clients—and accounts in the names of, or under the control of, Mr. Voorhees and/or his then-spouse, Mr. Dorobek, totaling more than ██REDACTED██, including the following (the "First Fraudulent Transfers"):

    a.  On September 6, 2011:  approximately ██REDACTED██.

    b.  On September 6, 2011:  approximately ██REDACTED██.

    c.  On September 12, 2011:  approximately ██REDACTED██.

22. Upon information and belief, the funds transferred in the First Fraudulent Transfers were not the personal property of Mr. Voorhees, and he had no right to the funds transferred in the First Fraudulent Transfers.  Rather, the funds transferred in the First Fraudulent Transfers were the property of Anybill or held in trust by Anybill.

23. Upon information and belief, the employees' concerns had already been brought to the attention of Mr. Voorhees, who had promised to review them with one of the employees, but no such reviews had taken place.

24. Mr. Bepler reviewed and analyzed the information about the First Fraudulent Transfers that the Anybill employees had reported to him and promptly alerted the Corporation's outside general counsel, Margaret Kavalaris, of SNR Denton, now Dentons US LLP ("Dentons US LLP" and its predecessor "SNR Denton" are hereinafter referred to as "Dentons").

25. Mr. Bepler reported to Dentons the concerns about the First Fraudulent Transfers that had been reported to him.

26. Ms. Kavalaris informed Mr. Bepler that Dentons would conduct an internal investigation into the First Fraudulent Transfers.

### DENTONS HELPS MR. VOORHEES BURY THE INVESTIGATION RESULTS

27. On September 27, 2011, as part of its internal investigation into the First Fraudulent Transfers, and under the guidance of Ms. Kavalaris and other Dentons attorneys, Dentons held a meeting at its office.

28. In that meeting, which was attended, organized, and run by attorneys from Dentons, Mr. Bepler confronted Mr. Voorhees about the First Fraudulent Transfers.  Mr. Voorhees asserted that the First Fraudulent Transfers were legitimate business activity; he explained that he had been using the personal accounts under his and Mr. Dorobek's names for Anybill business; and he explained that he had intended to change the account names from his and Mr. Dorobek's names to Anybill's name but had simply neglected to do so.  However, he did not explain the purported business reasons for the transfers.

29. On September 28, 2011, as part of the Dentons investigation into the First Fraudulent Transfers, a meeting was held by Dentons at the Anybill office.

30. That meeting included Mr. Voorhees and Mr. Bepler.

31. Upon information and belief, the following Dentons attorneys were also in attendance and were directly involved in, or witnesses to, the investigation of the First Fraudulent Transfers: Ms. Kavalaris, Esq.; Kenneth Pfaehler, Esq.; David Ackerman, Esq.; and Tom Hanley, Esq.

32. In that meeting, Mr. Voorhees stated that he would cease using the personal accounts to hold the funds of Anybill and its clients and would put in place proper procedures and controls to ensure the problem would not recur.

33. As part of his *mea culpa*, Mr. Voorhees added Mr. Bepler to those with access to review the Corporation's banking accounts, via the Wells Fargo online platform, to provide greater transparency with the Corporation's handling of funds.

34. At that meeting, attorneys for Dentons stated that the firm would prepare and deliver to Anybill's Board of Directors an investigation and governance memorandum concerning the First

Fraudulent Transfers.  Upon information and belief, Dentons prepared one or more draft memoranda.

35. No such memorandum was ever received by Mr. Bepler.

36. Over the next several months, Ms. Kavalaris stated the alleged intention of Dentons to deliver the completed investigation and governance memorandum to the Board of Directors; but no meeting of the Board of Directors was held to review or discuss the investigation, and upon information and belief, the memorandum was never delivered to the full Board of Directors, nor were any results of the investigation shared with the full Board of Directors.

37. Upon information and belief, Mr. Voorhees prevented this memorandum from being delivered in order to fraudulently conceal his own improper conduct.

38. Furthermore, Mr. Voorhees caused the dismissal of the two employees who had reported the First Fraudulent Transfers to Mr. Bepler, by informing them of his decision to dismiss them and by offering a severance package conditioned on resignation and non-disclosure, which they accepted.  This conduct furthered Mr. Voorhees's acts of fraudulent concealment, by eliminating witnesses to the First Fraudulent Transfers from the Corporation through intimidation and the threat of the loss of severance payments.

## MR. VOORHEES'S SECOND FRAUDULENT TRANSFERS

39. On December 20, 2013, during a regular review of Anybill's bank accounts, Mr. Bepler again discovered multiple large transfers between Anybill's corporate accounts and, upon information and belief, accounts in the names of, or under the control of, Mr. Voorhees and/or Mr. Dorobek, totaling approximately REDACTED (the "Second Fraudulent Transfers").

    a. On October 3, 2013:  approximately REDACTED;

    b. On October 4, 2013:  approximately REDACTED;

    c. On October 4, 2013:  approximately REDACTED;

    d. On November 4, 2013:  approximately REDACTED;

    e. On December 6, 2013:  approximately REDACTED;

    f. On December 6, 2013:  approximately REDACTED.

40. Upon information and belief, the funds transferred in the Second Fraudulent Transfers were not the personal property of Mr. Voorhees, and he had no right to the funds transferred in the Second Fraudulent Transfers.  Rather, the funds transferred in the Second Fraudulent Transfers were the property of Anybill or held in trust by Anybill.

41. Furthermore, although immediately following the investigation into the First Fraudulent Transfers, Mr. Voorhees's attitude toward Mr. Bepler was cordial, beginning in 2013, Mr. Voorhees became increasingly more hostile to Mr. Bepler.  Mr. Voorhees's communication with Mr. Bepler also decreased, as Mr. Voorhees failed to answer e-mails and ignored or avoided attempts at in-person communication, despite the close physical proximity of their offices.

42. Upon information and belief, over the period including the First and Second Fraudulent Transfers, Mr. Voorhees's Anybill salary had not substantially increased; yet his lifestyle became even more extravagant.

43. Upon information and belief, over the period described herein, Mr. Voorhees acquired— through shell companies, through Anybill, or personally—a personal aircraft and multiple watercraft including at least one yacht, multiple real-estate properties, and several luxury automobiles.

44. Upon information and belief, one of those luxury automobiles, a Bentley, was given as a gift to Mr. Roche and his wife, Mr. Voorhees's mother.

## MR. BEPLER'S INVESTIGATION AND
## MR. VOORHEES'S CONCEALMENT AND RETALIATION

45. Mr. Bepler sought legal advice; he then contacted Anybill's then-Director of Finance and in-house counsel, Joseph Komisar.

46. Mr. Komisar acknowledged the transfers but did not provide information concerning why they had been made.

47. Upon information and belief, Mr. Komisar reported to Mr. Voorhees the conversations he had with Mr. Bepler.

48. Upon information and belief, Mr. Voorhees directed Mr. Komisar to hide the facts and circumstances surrounding the Second Fraudulent Transfers from Mr. Bepler.

49. In January 2014, Mr. Voorhees made an offer to purchase Mr. Bepler's shares in Anybill.

50. Upon information and belief, this offer was intended to prevent Mr. Bepler from interfering with or investigating Mr. Voorhees's improper financial dealings.

51. Although Mr. Bepler—a member of the Corporation's Board of Directors—requested copies of the company's tax returns, audited financial statements, and other documents concerning the company's finances, Mr. Voorhees, and other agents of Anybill at his apparent direction, refused or failed to provide these documents.

52. After Mr. Bepler's request, Mr. Komisar failed to provide Mr. Bepler with the Corporation's tax returns.

53. Upon information and belief, this refusal was the result of Mr. Voorhees's direction.

54. As part of Mr. Voorhees's buy-out offer, Mr. Voorhees provided only limited, unaudited financial statements and no tax returns, despite the fact that Anybill was contractually required to provide Mr. Bepler and other Corporation investors audited financial documents annually.

55. At that time in early 2014, Mr. Voorhees stated that the tax returns for the preceding three years were still being prepared.

56. Upon information and belief, this refusal by Mr. Voorhees to provide the Corporation's financial documents to Mr. Bepler was part and parcel of Mr. Voorhees's attempts to conceal the fact, nature, and damage of the First and Second Fraudulent Transfers.

57. In February 2014, after Mr. Bepler's unsuccessful attempts to discuss the Second Fraudulent Transfers with Mr. Komisar, Mr. Voorhees angrily approached Mr. Bepler in person, in the Anybill offices.  Mr. Voorhees demanded to know how Mr. Bepler had obtained the bank-account information showing the Second Fraudulent Transfers.

58. Mr. Voorhees revealed that he had attempted to track Mr. Bepler's access to view the Corporation's bank accounts and did not see evidence of Mr. Bepler's access.  Apparently, Mr. Voorhees did not recall that he had arranged for Mr. Bepler's ability to review Anybill's

corporate bank accounts after Mr. Voorhees had been caught orchestrating the First Fraudulent Transfers.

59. At that meeting, Mr. Voorhees became angry that Mr. Bepler had reviewed the Corporation's bank accounts, despite having previously provided Mr. Bepler with access to do so.

60. Also at that meeting, Mr. Voorhees told Mr. Bepler that several of Anybill's clients were business entities that he owned or controlled; that the purpose of the Second Fraudulent Transfers was private and confidential; and that the Second Fraudulent Transfers were not Mr. Bepler's business, even though he was President of Anybill.

61. At that time, Mr. Voorhees refused to tell Mr. Bepler the purpose or nature of the transfers and in fact concealed the fact, nature, extent, and reasons for the transfers.

62. Mr. Voorhees also did not explain how it was possible that entities he owned or controlled were doing business with Anybill directly, inasmuch as by statute and by contract, any such interested transactions were required to be approved by the Corporation's Board of Directors or stockholders, and upon information and belief neither were requested to give, or gave, such approval.

63. Remarkably, Mr. Voorhees then asked Mr. Bepler whether he had decided to accept Mr. Voorhees's buy-out offer.

64. When Mr. Bepler stated that he could not make a decision on a buy-out without seeing the company's tax returns and audited financials, Mr. Voorhees brushed off the idea and said the tax returns would provide little value to Mr. Bepler.  Mr. Voorhees also refused to provide audited financials.  Mr. Voorhees thereby further attempted to conceal the fact, nature, extent, and reasons for the Second Fraudulent Transfers, as well as the damage the Second Fraudulent Transfers had on Anybill's finances.

65. Mr. Voorhees also stated that creating audited financial statements would take longer to complete than he was willing to wait, and would be too expensive, although the Corporation was required to create them by contract.  Again, Mr. Voorhees thereby further attempted to conceal

the fact, nature, extent, and reasons for the Second Fraudulent Transfers, as well as the damage the Second Fraudulent Transfers had on Anybill's finances.

66. Mr. Voorhees also stated that he and Director Patrick Roche were "running out of patience" with Mr. Bepler.

67. Within minutes of that meeting, Mr. Bepler's access to oversee Anybill's Wells Fargo bank account was revoked.

68. On or about February 6, 2014, Mr. Voorhees discharged or reassigned the remaining employees who reported to Mr. Bepler, reducing the total number of employees reporting directly to Mr. Bepler, still purportedly President of the Corporation, to zero.

69. Upon information and belief, these actions were taken for the following reasons:

   a.  to marginalize Mr. Bepler within the Corporation and force him to resign;

   b.  to prevent Mr. Bepler from discovering the Second Fraudulent Transfers and similar transactions;

   c.  to prevent Mr. Bepler from reporting the Second Fraudulent Transfers and similar transactions; and

   d.  in retaliation for reporting the First and Second Fraudulent Transfers.

70. Over the course of 2014 and 2015, Mr. Bepler repeatedly tried to obtain the financial records of the Corporation, but he was stymied at every turn.



**REDACTED**

73. Effective July 2016, in retaliation for Mr. Bepler's investigation in to Mr. Voorhees's improper conduct, Anybill reduced Mr. Bepler's salary to approximately one quarter of its original amount.

74. Since its founding in 2001, Anybill has never returned a dividend to its shareholders.

75. Instead, financial returns to Anybill's co-founders are made through salary.

**REDACTED**

### MR. VOORHEES THWARTS BOARD OVERSIGHT

77. Although the Corporation has a three-person Board of Directors, upon which Mr. Voorhees, Mr. Roche, and Mr. Bepler sit, Mr. Voorhees runs the Corporation as if it were his own.

78. For a period of approximately four and a half years, from July 2012 to November 29, 2016, Mr. Bepler did not receive actual notice of a single meeting of the Corporation's Board of Directors.

79. Despite repeated requests, Mr. Bepler has not received minutes of any meeting of the Board of Directors since 2012.

80. Upon information and belief, the Corporation did not hold a single meeting of the Board of Directors from July 2012 to November 29, 2016.

81. Upon information and belief, Mr. Voorhees has made all decisions, including those properly reserved for the Board of Directors, without informing Mr. Bepler, without seeking Mr. Bepler's consent, and in secret consultation with Mr. Roche, to whom information has been provided that was not provided to Mr. Bepler.

82. Upon information and belief, as a result of the First and Second Fraudulent Transfers, the profits of the Corporation have been reduced, resulting in a failure to reinvest in the Corporation and/or distribute dividends, and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.

83. Upon information and belief, as a result of the First and Second Fraudulent Transfers, the Corporation's available cash was reduced, thereby artificially lowering the valuation for any potential buy-out of Mr. Bepler or others.

## MR. VOORHEES'S DUTIES

84. Mr. Voorhees, by reason of his position as a director and officer of Anybill, owed Anybill and its shareholders fiduciary obligations of trust, loyalty, due care, good faith, and fair dealing, and he was required to use his utmost ability to control Anybill in a fair, just, honest, and equitable manner.

85. Mr. Voorhees owes to Anybill and its shareholders the fiduciary duty to exercise due care and good faith and diligence in the administration of the Corporation's affairs and the highest obligations of fair dealing.

86. To discharge his duties, Mr. Voorhees was required to exercise reasonable and prudent supervision over the Corporation's finances.  By virtue of his duties, Mr. Voorhees was required, among other things, to do the following:

    a. disclose to the Corporation's officers and directors the fact and nature of any transfers of funds made to himself or Mr. Dorobek, or to any bank account owned or controlled by Mr. Voorhees or Mr. Dorobek;

    b. disclose to the Corporation's officers and directors the fact and nature of any business relationship between Anybill and any company, partnership, or other entity owned or controlled, in whole or in part, by Mr. Voorhees;

    c. ensure that fraudulent transfers of the Corporation's funds were not made;

    d. refrain from causing funds held by the Corporation to be transferred to his and/or Mr. Dorobek's bank accounts; and

    e. obtain approval from the Corporation's Board of Directors or shareholders for transactions between the Corporation and himself or any entity that he owns or controls.

87. Mr. Voorhees's conduct described herein involves a reckless and/or knowing violation of his obligations as an officer and director of Anybill; the absence of good faith on his part; and a reckless disregard for his duties to the Corporation and its shareholders that he was aware and should have been aware posed the risk of serious injury, and actual injury, to the Corporation.

88. Mr. Voorhees breached his fiduciary duties by causing the First and Second Fraudulent Transfers and by failing to report the First and Second Fraudulent Transfers, which caused the Corporation's profits to be reduced, prevented the Corporation from issuing dividends to shareholders, and subjected the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.

89. Mr. Voorhees also breached his fiduciary duties by transferring funds off the Corporation's books, thereby artificially lowering the valuation for any potential buy-out of Mr. Bepler or others.

90. During the times relevant hereto, Mr. Voorhees breached his fiduciary duties to Anybill's shareholders by failing to prevent financial statements from being disclosed that misrepresented Anybill's actual financial status and results.

91. Moreover, these actions are exceedingly likely to irreparably damage Anybill's corporate image and goodwill.  Anybill is highly likely to suffer from what is known as the "liar's discount," a term applied to the stocks of companies implicated in illegal behavior that misleads investors, such that Anybill's ability to raise equity capital or debt on favorable terms in the future will be impaired.  As a financial-services company entrusted with client funds, Anybill is also highly likely to experience a severe decrease in client trust and the ability to retain existing business and attract new business.

## DEMAND ON THE ANYBILL BOARD IS EXCUSED AS FUTILE

92. Mr. Bepler has not made a demand on the Anybill Board to bring suit asserting the claims set forth herein because pre-suit demand would be futile and is excused as a matter of law.

93. *First*, the First and Second Fraudulent Transfers are plainly interested transactions on terms that are patently unfair to the Corporation.  Because the First and Second Fraudulent Transfers were interested transactions, Mr. Voorhees will bear the burden of proving the entire fairness of the transactions.  Because the allegations set forth above demonstrate that the First and Second Fraudulent Transfers are not entirely fair to the Corporation, the First and Second Fraudulent Transfers cannot be deemed a product of the valid exercise of business judgment, and demand is excused as a matter of law.

94. *Second*, because the First and Second Fraudulent Transfers are unfair to Anybill, and their approval is inexplicable except on grounds of bad faith or a lack of independence, these transactions cannot be deemed a product of the valid exercise of business judgment, and demand is excused as a matter of law.

95. *Third*, the First and Second Fraudulent Transfers provide substantial benefit to Mr. Voorhees.  However, the First and Second Fraudulent Transfers provide no benefit to the Corporation and could have catastrophic effects on the Corporation's finances and its confidence with customers.  Moreover, the First and Second Fraudulent Transfers have depleted Anybill's cash reserves and placed the company in a difficult financial position, preventing the Corporation from reinvesting profits or distributing dividends and subjecting the Corporation to the risk of

regulatory enforcement for improper financial accounting and/or treatment and protection of funds. The First and Second Fraudulent Transfers have also depleted the Corporation's available cash, artificially lowering the valuation for any potential buy-out of Mr. Bepler or others.

96. *Fourth*, a majority of Anybill directors suffer from conflicts of interest and divided loyalties that preclude them from exercising independent business judgment. The directors suffer from the following incapacitating conflicts:

    a. Mr. Voorhees caused and benefited from the First and Second Fraudulent Transfers, which were made to personal accounts owned or controlled by Mr. Voorhees and/or Mr. Dorobek. Mr. Voorhees is a direct beneficiary of the First and Second Fraudulent Transfers. Upon information and belief, in his position as a member of the Board of Directors, Mr. Voorhees has engaged in secret consultations with Mr. Roche, in which information was traded that was not provided to Mr. Bepler, and no effort was made to provide the information to Mr. Bepler.

    b. Director Roche has been Mr. Voorhees's step-father since his early teenage years, and Mr. Voorhees considers Mr. Roche to be his father. Mr. Voorhees and Mr. Roche have endeavored to squeeze Mr. Bepler out of running the company. Mr. Roche has also been the beneficiary of Mr. Voorhees's largesse, including receiving, with his spouse, the gift of a luxury automobile from Mr. Voorhees. Moreover, Mr. Roche is employed by Anybill and receives a material portion of his yearly income from the Corporation, and his employment may be terminated or reduced at the direction of Mr. Voorhees. Mr. Roche serves on the Anybill Board of Directors at Mr. Voorhees's behest and in accordance with his wishes. In his position as a member of the Board of Directors, Mr. Roche has engaged in secret consultations with Mr. Voorhees, in which information was traded that was not provided to Mr. Bepler, and no effort was made to provide the information to Mr. Bepler.

97. *Fifth*, demand is excused by the simple fact that Mr. Voorhees would be required to sue himself, potentially subjecting himself to personal liability.  Here, where the First and Second Fraudulent Transfers are so unreasonable on their face that approval cannot meet the test of business judgment, a high likelihood of director liability exists.  This high likelihood alone establishes demand futility.

98. *Sixth*, demand is excused by the fact that Mr. Voorhees would be required to sue his spouse, Mr. Dorobek, subjecting their joint assets to the award of damages.  Here, where Mr. Dorobek is otherwise unconnected to Anybill and clearly has no right to the funds transferred in the First and Second Fraudulent Transfers, and those transfers are so unreasonable on their face, damages awarded against Mr. Dorobek are highly likely to be damaging to Mr. Voorhees himself.  This high likelihood also establishes demand futility.

99. *Seventh*, Mr. Voorhees's refusal to investigate and explain, and his attempts to conceal, the First and Second Fraudulent Transfers, when prompted by Mr. Bepler and other Anybill employees, is indicative of Mr. Voorhees's bad-faith handling of these matters.

100. The Anybill Board is incapable or unwilling to take the actions required to seek the relief requested in this complaint.

101. Any demand upon the Corporation to undertake this litigation against Mr. Voorhees or Mr. Dorobek would be futile.

## CAUSES OF ACTION

## COUNT I

**Fraud**
**(Derivatively Against Mr. Voorhees)**

102. Plaintiff incorporates by reference as though restated each of the factual allegations in paragraphs 1 through 101 above.

103. Mr. Voorhees's proffered explanations for the First Fraudulent Transfers were false and misleading.

104.     In his capacity as an officer, director, and shareholder of the Corporation, Mr. Bepler, and/or other officers, directors, and shareholders of the Corporation reasonably relied on the truth of these false and misleading explanations.

105.     The Corporation was thereby damaged, by limiting its ability to reinvest these funds, reducing the funds available for dividends, and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.

106.     Mr. Voorhees's proffered explanations for the Second Fraudulent Transfers were false and misleading.

107.     In his capacity as an officer, director, and shareholder of the Corporation, Mr. Bepler, and/or other officers, directors, and shareholders of the Corporation reasonably relied on the truth of these false and misleading explanations.

108.     The Corporation was thereby damaged, by limiting its ability to reinvest these funds, reducing the funds available for dividends, and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.


## COUNT II

**Fraud**
**(Directly Against Mr. Voorhees)**

109.     Plaintiff incorporates by reference as though restated each of the factual allegations in paragraphs 1 through 108 above.

110.     Mr. Voorhees's proffered explanations for the First Fraudulent Transfers were false and misleading.

111.     Mr. Bepler reasonably relied on the truth of these false and misleading explanations.

112.     Mr. Bepler was thereby damaged, subjecting him to potential liability as a Director of the Corporation and convincing him to continue his employment with, and continue to hold his shares in, the Corporation.

113.     Mr. Voorhees's proffered explanations for the Second Fraudulent Transfers were false and misleading.

114.     Mr. Bepler reasonably relied on the truth of these false and misleading explanations.

115.     Mr. Bepler was thereby damaged, subjecting him to potential liability as a Director of the Corporation and convincing him to continue his employment with, and continue to hold his shares in, the Corporation.


# COUNT III

**Misappropriation**
**(Derivatively against Mr. Voorhees)**

116.     Plaintiff incorporates by reference as though restated each of the factual allegations in paragraphs 1 through 115 above.

117.     The funds transferred in the First Fraudulent Transfers belonged to Anybill and were not the personal property of Mr. Voorhees, and he had no right to the funds transferred in the First Fraudulent Transfers.

118.     Mr. Voorhees took possession of and used the funds transferred in the First Fraudulent Transfers for his own purposes.

119.     Mr. Voorhees therefore misappropriated the funds in the First Fraudulent Transfers.

120.     The funds transferred in the Second Fraudulent Transfers belonged to Anybill and were not the personal property of Mr. Voorhees, and he had no right to the funds transferred in the Second Fraudulent Transfers.

121.     Mr. Voorhees took possession of and used the funds transferred in the Second Fraudulent Transfers for his own purposes.

122.     Mr. Voorhees therefore misappropriated the funds in the Second Fraudulent Transfers.

123.     The Corporation was thereby damaged, by limiting its ability to reinvest the funds in the First and Second Fraudulent Transfers, reducing the funds available for dividends, and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.


**COUNT IV**

**Conversion**
**(Derivatively against Mr. Voorhees)**

124.     Plaintiff incorporates by reference as though restated each of the factual allegations in paragraphs 1 through 123 above.

125.     The funds transferred in the First Fraudulent Transfers belonged to Anybill and were not the personal property of Mr. Voorhees, and he had no right to the funds transferred in the First Fraudulent Transfers.

126.     By transferring the funds in the First Fraudulent Transfers to accounts he owned or controlled, Mr. Voorhees exercised unlawful ownership, dominion, or control over the Corporation's funds.

127.     Mr. Voorhees therefore converted the funds in the First Fraudulent Transfers.

128.     The funds transferred in the Second Fraudulent Transfers belonged to Anybill and were not the personal property of Mr. Voorhees, and he had no right to the funds transferred in the Second Fraudulent Transfers.

129.     By transferring the funds in the Second Fraudulent Transfers to accounts he owned or controlled, Mr. Voorhees exercised unlawful ownership, dominion, or control over the Corporation's funds.

130.     Mr. Voorhees therefore converted the funds in the Second Fraudulent Transfers.

131.     The Corporation was thereby damaged, by limiting its ability to reinvest the funds in the First and Second Fraudulent Transfers, reducing the funds available for dividends, and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.

## COUNT V

**Breach of Fiduciary Duty**
**(Derivatively against Mr. Voorhees)**

132.     Plaintiff incorporates by reference as though restated each of the factual allegations in paragraphs 1 through 131 above.

133.     Mr. Voorhees, as an officer and director of the Corporation, owed fiduciary duties to the Corporation and its shareholders.

134.     By initiating, authorizing, making, or otherwise causing the First and Second Fraudulent Transfers; by failing to prevent the First and Second Fraudulent Transfers; and by concealing the First and Second Fraudulent Transfers, Mr. Voorhees violated his fiduciary duties to the Corporation and its shareholders.

135.     These actions caused damage to the Corporation and its shareholders, depriving the Corporation of funds that properly belonged to it, preventing investment of those funds for the Corporation's benefit or distribution of the funds as dividends, and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.

## COUNT VI

**Wrongful Discharge in Violation of Public Policy**
**(Directly Against Anybill)**

136.     Plaintiff incorporates by reference as though restated each of the factual allegations in paragraphs 1 through 135 above.

137.     By eliminating, directly and indirectly, the employees who reported to Mr. Bepler in his capacity as the Corporation's President, Anybill constructively discharged Mr. Bepler from his role as President of the Corporation.

138.     Mr. Bepler was stripped of his power as President.

139.     Employees who reported directly to Mr. Bepler were removed from his purview.

140.     Mr. Bepler was not included in meetings of the Corporation's Board of Directors or in management meetings.

141.     Furthermore, Mr. Bepler's salary was subsequently reduced dramatically, to approximately one-quarter of its prior amount.

142.     Mr. Voorhees, on behalf of Anybill, took the above actions to wrongfully discharge Mr. Bepler from his role as President of the Corporation, to prevent him from having visibility into future fraudulent transactions, to prevent him from being able to report on any transactions including and similar to the First and Second Fraudulent Transfers, to intimidate Mr. Bepler into not reporting the First and Second Fraudulent Transfers, and in retaliation for Mr. Bepler's investigation of and initial reporting of the First and Second Fraudulent Transfers. Mr. Voorhees's actions were contrary to public policy, including among others public policy prohibiting witness intimidation and protecting the reporting of financial improprieties.

## COUNT VII

**Minority Shareholder Oppression**
**(Directly Against Mr. Voorhees)**

143.     Plaintiff incorporates by reference as though restated each of the factual allegations in paragraphs 1 through 142 above.

144.     Mr. Bepler is a minority shareholder in Anybill.

145.     Mr. Voorhees, as a director, corporate officer, and controlling shareholder, has oppressed Mr. Bepler by squeezing him out of the Corporation, including preventing him from participating in Corporation decisions and, reducing his authority within the Corporation,

reducing his compensation by the Corporation, and constructively discharging him from his role as the Corporation's President.

146.     Although Anybill has never declared a dividend, it rewards its co-founders—Mr. Voorhees and Mr. Roche, and Mr. Bepler, before he crossed Mr. Voorhees—with employment.

147.     By drastically reducing Mr. Bepler's authority and salary, Mr. Voorhees has denied Mr. Bepler the employment expected of a co-founder and major shareholder.

148.     By these actions, Mr. Voorhees has breached his fiduciary duties to Mr. Bepler and has oppressed Mr. Bepler in his capacity as a minority shareholder.


## COUNT VIII

**Conspiracy to Misappropriate Funds**
**(Derivatively Against Mr. Voorhees)**

149.     Plaintiff incorporates by reference as though restated each of the factual allegations in paragraphs 1 through 148 above.

150.     Mr. Voorhees caused the First Fraudulent Transfers to be made and to be concealed by agreement with others, including one or more employees of Anybill and Mr. Dorobek.

151.     The First Fraudulent Transfers were unlawful and improper misappropriation.

152.     The act of causing the First Fraudulent Transfers was pursuant to, and in furtherance of, that agreement or common scheme to misappropriate funds.

153.     The First Fraudulent Transfers, caused directly by the conspiracy orchestrated by Mr. Voorhees, damaged the Corporation by depriving it of needed funds for re-investment and to pay dividends to shareholders and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.

154.      Mr. Voorhees caused the Second Fraudulent Transfers to be made and to be concealed by agreement with others, including one or more employees of Anybill and Mr. Dorobek.

155.      The Second Fraudulent Transfers were unlawful and improper misappropriation.

156.      The act of causing the Second Fraudulent Transfers was pursuant to, and in furtherance of, that agreement or common scheme to misappropriate funds.

157.      The Second Fraudulent Transfers, caused directly by the conspiracy orchestrated by Mr. Voorhees, damaged the Corporation by depriving it of needed funds for re-investment and to pay dividends to shareholders and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.


## COUNT IX

**Conspiracy to Convert Funds**
**(Derivatively Against Mr. Voorhees)**

158.      Plaintiff incorporates by reference as though restated each of the factual allegations in paragraphs 1 through 157 above.

159.      Mr. Voorhees caused the First Fraudulent Transfers to be made and concealed by agreement with others, including one or more employees of Anybill and Mr. Dorobek.

160.      The First Fraudulent Transfers were unlawful and improper conversion.

161.      The act of causing the First Fraudulent Transfers was pursuant to, and in furtherance of, that agreement or common scheme to convert funds.

162.      The First Fraudulent Transfers, caused directly by the conspiracy orchestrated by Mr. Voorhees, damaged the Corporation by depriving it of needed funds for re-investment and to pay dividends to shareholders and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.

163.     Mr. Voorhees caused the Second Fraudulent Transfers to be made and to be concealed by agreement with others, including one or more employees of Anybill and Mr. Dorobek.

164.     The Second Fraudulent Transfers were unlawful and improper conversion.

165.     The act of causing the Second Fraudulent Transfers was pursuant to, and in furtherance of, that agreement or common scheme to convert funds.

166.     The Second Fraudulent Transfers, caused directly by the conspiracy orchestrated by Mr. Voorhees, damaged the Corporation by depriving it of needed funds for re-investment and to pay dividends to shareholders and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.


## COUNT X

**Conspiracy to Misappropriate Funds**
**(Derivatively Against Mr. Dorobek)**

167.     Plaintiff incorporates by reference as though restated each of the factual allegations in paragraphs 1 through 166 above.

168.     Mr. Dorobek knew of, was complicit in, and received the benefit of the First Fraudulent Transfers, which were made and concealed by agreement with others, including one or more employees of Anybill and Mr. Voorhees.

169.     The First Fraudulent Transfers were unlawful and improper misappropriation.

170.     The First Fraudulent Transfers were made pursuant to, and in furtherance of, that agreement or common scheme to misappropriate funds.

171.     The First Fraudulent Transfers, caused directly by the conspiracy of which Mr. Dorobek was a part, damaged the Corporation by depriving it of needed funds for re-investment and to pay dividends to shareholders and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.

172.      Mr. Dorobek knew of, was complicit in, and received the benefit of the Second Fraudulent Transfers, which were made and concealed by agreement with others, including one or more employees of Anybill and Mr. Voorhees.

173.      The Second Fraudulent Transfers were unlawful and improper misappropriation.

174.      The Second Fraudulent Transfers were made pursuant to, and in furtherance of, that agreement or common scheme to misappropriate funds.

175.      The Second Fraudulent Transfers, caused directly by the conspiracy of which Mr. Dorobek was a part, damaged the Corporation by depriving it of needed funds for re-investment and to pay dividends to shareholders and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.


## COUNT XI

**Conspiracy to Convert Funds**
**(Derivatively Against Mr. Dorobek)**

176.      Plaintiff incorporates by reference as though restated each of the factual allegations in paragraphs 1 through 175 above.

177.      Mr. Dorobek knew of, was complicit in, and received the benefit of the First Fraudulent Transfers, which were made and concealed by agreement with others, including one or more employees of Anybill and Mr. Voorhees.

178.      Mr. Dorobek used the funds received in the First Fraudulent Transfers for his own personal benefit.

179.      The First Fraudulent Transfers were unlawful and improper conversion.

180.      The First Fraudulent Transfers were made pursuant to, and in furtherance of, that agreement or common scheme to convert funds.

181.      The First Fraudulent Transfers, caused directly by the conspiracy of which Mr. Dorobek was a part, damaged the Corporation by depriving it of needed funds for re-

investment and to pay dividends to shareholders and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.

182.     Mr. Dorobek knew of, was complicit in, and received the benefit of the Second Fraudulent Transfers, which were made and concealed by agreement with others, including one or more employees of Anybill and Mr. Voorhees.

183.     The Second Fraudulent Transfers were unlawful and improper conversion.

184.     The Second Fraudulent Transfers were made pursuant to, and in furtherance of, that agreement or common scheme to convert funds.

185.     The Second Fraudulent Transfers, caused directly by the conspiracy orchestrated by Mr. Voorhees, damaged the Corporation by depriving it of needed funds for re-investment and to pay dividends to shareholders and subjecting the Corporation to the risk of regulatory enforcement for improper financial accounting and/or treatment and protection of funds.


**RELIEF**

WHEREFORE, Plaintiff seeks judgement in his favor, and:

A.  a declaration that making a demand upon the Anybill Board of Directors to investigate and prosecute the claims alleged herein would be futile for the reasons alleged herein;

B.  a declaration that Mr. Voorhees breached his fiduciary duties to the Corporation, to its shareholders, and to Mr. Bepler;

C.  a declaration that Mr. Voorhees oppressed Mr. Bepler, in his position as a minority shareholder;

D.  an order requiring immediate disgorgement of all profits, benefits, and other compensation obtained by Mr. Voorhees as a result of his breaches of his fiduciary duties;

E.  an order requiring Anybill to reinstate Mr. Bepler to his position within Anybill, including salary and benefits, as well as employee-reporting structure;

F.  an award to Mr. Bepler of back pay and fringe benefits lost as a result of Anybill's unlawful conduct;

G.  an award to Mr. Bepler of front pay and fringe benefits lost as a result of Anybill's unlawful conduct, to a date to be proved at trial;

H.  an award to the Corporation of damages in the amount of $29.75 million, plus pre-judgment interest, as well as further damages to be proved at trial;

I.  an order directing Anybill to undergo an audit of its financial condition, performed by an independent forensic accountant;

J.  an award of putative damages to Mr. Bepler in the amount of $75 million; and

K.  an award to Mr. Bepler of the costs and disbursements of this action, including a reasonable allowance for Mr. Bepler's attorneys' and experts' fees;

L.  such other relief as this Court deems just and appropriate.


## JURY TRIAL DEMANDED

Plaintiff respectfully demands a jury trial.


Respectfully Submitted,


Dated:  June 6, 2017

/s/
Richard P. Goldberg (D.C. Bar No. 492926)
GOLDBERG & CLEMENTS, PLLC
1250 Connecticut Avenue NW, Suite 200
Washington, D.C.  20036
Telephone: (202) 656-5774
richard.goldberg@goldbergclements.com
*Counsel for Plaintiff Peter Bepler*

## VERIFICATION

I, Peter Bepler, a citizen of the United States and a resident of the District of Columbia, am the plaintiff in this action. I have read the foregoing Verified Complaint and, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that those factual matters that are stated upon information and belief are believed by me to be true

Peter Bepler

05/26/2017
Date

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Peter Bepler

Case Number: **2017 CA 003949 B**

vs

Daniel Matthew Vorobek, Christopher John Vorobek, and Anybill Financial Services Inc.

Date: ___June 6, 2017___

☐ One of the defendants is being sued in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*<br>Richard P. Goldberg | Relationship to Lawsuit |
| Firm Name:<br>Goldberg & Clements, PLLC | ☒ Attorney for Plaintiff |
| Telephone No.:          Six digit Unified Bar No.:<br>(202) 656-5774                          492926 | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury        ☐ 6 Person Jury        ☒ 12 Person Jury

Demand: $104,750,000_____        Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____ Judge: _____ Calendar #:_____

Case No.:_____ Judge: _____ Calendar#:_____

---

NATURE OF SUIT:     *(Check One Box Only)*

**A. CONTRACTS**                              **COLLECTION CASES**

| | | |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration<br>Award (Collection Cases Only) | |

---

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

---

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile,<br>Not Malpractice) |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 20 Friendly Suit |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 21 Asbestos |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile,<br>Not Malpractice) | ☐ 23 Tobacco |
| ☒ 08 Fraud | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE         IF USED

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

 

 

  /s/  Richard P. Goldberg                          June 6, 2017
—————————————————————          —————————————————
Attorney's Signature                                      Date

CV-496/ June 2015



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Peter Bepler
_____
                                                    Plaintiff

vs.                                                                    Case Number   **2017 CA 003949 B**
                                                                                   _____

Daniel Matthew Vorobek (aka Daniel Matthew Voorhees)
_____
                                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Richard P. Goldberg
_____              _Clerk of the Court_
Name of Plaintiff's Attorney

Goldberg & Clements, PLLC
_____       By  _____
Address                                                        Deputy Clerk
1250 Connecticut Avenue NW, Suite 200
_____

Washington, D.C.  20036
_____       Date  **06/08/2017**
Telephone

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요        የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT:  IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                          CASUM.doc





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

_____
                                    Demandante
            contra
                                                        Número de Caso: _____
_____
                                    Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                                    _SECRETARIO DEL TRIBUNAL_
_____
Nombre del abogado del Demandante

                                                    Por: _____
_____
Dirección                                                Subsecretario

_____
                                                    Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

                                                                        CASUM.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Peter Bepler
_____
                              Plaintiff

                    vs.                                Case Number   2017 CA 003949 B

Christopher John Vorobek (aka Christopher John Dorobek)
_____
                              Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Richard P. Goldberg                                      _Clerk of the Court_
_____
Name of Plaintiff's Attorney

Goldberg & Clements, PLLC                      By _____
_____                              Deputy Clerk
Address
1250 Connecticut Avenue NW, Suite 200
_____

Washington, D.C.  20036                            Date     06/08/2017
_____
Telephone

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오        የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

_____
                              Demandante

          contra

                                          Número de Caso: _____

_____
                              Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                         _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

                              Por: _____

_____
Dirección                                         Subsecretario

                              Fecha _____

_____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

                                                                 CASUM.doc



**Superior Court of the District of Columbia**
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

| | |
|---|---|
| Peter Bepler | |
| Plaintiff | |

vs.                                                Case Number  **2017 CA 003949 B**

| | |
|---|---|
| Anybill Financial Services Inc. | |
| Defendant | |

### SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

| | |
|---|---|
| Richard P. Goldberg | *Clerk of the Court* |
| Name of Plaintiff's Attorney | |
| Goldberg & Clements, PLLC | By _____ |
| Address | Deputy Clerk |
| 1250 Connecticut Avenue NW, Suite 200 | |
| Washington, D.C.  20036 | Date  **06/08/2017** |
| Telephone | |

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오        የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

        IMPORTANT:  IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                                        CASUM.doc





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

_____
                                        Demandante

        contra

                                                        Número de Caso: _____

_____
                                        Demandado

### CITATORIO

Al susodicho Demandado:

        Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

        A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____                _SECRETARIO DEL TRIBUNAL_
Nombre del abogado del Demandante

                                                        Por: _____
_____
Dirección                                                      Subsecretario

_____
                                                Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오      የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

        IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

        Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

                                                                                CASUM.doc



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

PETER BEPLER
    Vs.                                          C.A. No.      2017 CA 003949 B
ANYBILL FINANCIAL SERVICES INC. et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                               Chief Judge Robert E. Morin

Case Assigned to: Judge ROBERT R RIGSBY
Date:  June 8, 2017
Initial Conference: 10:00 am, Friday, September 15, 2017
Location:   Courtroom 516
               500 Indiana Avenue N.W.
               WASHINGTON, DC  20001                          Caio.doc

# ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

Caio.doc