**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| PETER BEPLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:17-cv-01876 (TSC) |
| ) | |
| DANIEL MATTHEW VOROBEK, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Peter Bepler sued Defendant Daniel Vorobek, née Vorhees[1], derivatively on behalf

of Anybill Financial Services, Inc., alleging that Voorhees fraudulently transferred Anybill's

funds to his personal accounts. Bepler brings several D.C. common law and federal claims under

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C §§ 1962 (c)-(d).

(ECF No. 68 ("Third Am. Compl.").) Voorhees moves to partially dismiss under Federal Rule

of Civil Procedure Rule 12(b)(6). (ECF Nos. 73 and 84.)[2] For the reasons set forth below, the

court will GRANT in part Voorhees' motion to dismiss and REMAND Bepler's remaining D.C.-

law claims.[3]

---

[1] The parties refer to the Defendant Daniel Vorobek by his unmarried name, Voorhees, so the
court will do the same.

[2] Pursuant to the sealing order in this case (ECF Nos. 53 and 54), the parties have filed public
versions and sealed versions of the complaint, motion, and briefing. The court refers to the
public versions and incorporates no facts subject to sealing.

[3] On September 20, 2019, this court dismissed Defendant Christopher John Vorobek without
prejudice and therefore dismissed Counts VIII and IX of the Third Amended Complaint, which
pleaded claims against him. (ECF No. 82, Order of Partial Dismissal.)

# I.    BACKGROUND

Bepler and Voorhees co-founded Anybill, a financial services firm that provides automated payment services to companies.  (Third Am. Compl. ¶¶ 2, 10.)  Bepler served as the company's President and a member of the Board of Directors.  (*Id.* ¶¶ 11, 43.)  Voorhees is the company's Chief Executive Officer and also a board member.  (*Id.* ¶¶ 3, 6.)

In September 2011, Anybill employees informed Bepler that Voorhees had transferred funds from Anybill's account into accounts in Voorhees and his husband's names (the "2011 Transfers").  (*Id.* ¶¶ 22–23.)  These transfers occurred on February 16, September 6, and September 12, 2011.  (*Id.* ¶ 23.)  Bepler alerted Anybill's outside counsel, who then conducted an independent investigation into the transfers.  (*Id.* ¶¶ 30–32.)  On September 27, 2011, outside counsel met with Bepler and Voorhees.  (*Id.* ¶ 33.)  In that meeting, Voorhees allegedly said he transferred the money to his personal accounts for legitimate business activity and that he intended to, but had not yet, changed the accounts to Anybill's name.  (*Id.* ¶ 34.)  In a meeting the next day, Voorhees allegedly stated that the "[t]ransfers were innocent, but that he would cease using personal accounts to hold the funds of Anybill and its clients and would put in place proper procedures and controls to ensure the problem would not recur."  (*Id.* ¶¶ 35, 38.)  Voorhees also gave Bepler access to review Anybill's bank accounts "to provide greater transparency."  (*Id.* ¶ 41.)  Outside counsel told Bepler and Voorhees that it would draft a memorandum reflecting its investigation into the 2011 Transfers, but Bepler never received the memorandum.  (*Id.* ¶¶ 42–43.)

On December 20, 2013, Bepler discovered new transfers from Anybill's corporate accounts into accounts in Voorhees and his husband's names (the "2013 Transfers").  (*Id.* ¶ 48.)  These transfers occurred on October 3, October 4, November 4, and December 6, 2013.  (*Id.*)

Bepler sought legal advice and questioned Anybill's finance director, Joseph Komisar, about the transfers. (*Id.* ¶ 58.) Komisar acknowledged the transfers but provided no information about "why they occurred." (*Id.* ¶ 59.) Komisar reported his conversation with Bepler to Voorhees, who allegedly directed Komisar to "hide the facts and circumstances surrounding" the 2013 Transfers. (*Id.* ¶¶ 60–61.) Voorhees later told Bepler that the transfers' purpose was "private and confidential" and that he controlled several businesses that were Anybill clients. (*Id.* ¶ 73.)

The following month, Voorhees offered to purchase Bepler's shares in Anybill. (*Id.* ¶ 62.) Bepler then requested the company's tax returns and audited financial statements, but, allegedly at Voorhees' direction, did not receive them. (*Id.* ¶¶ 64–66.) In a later conversation about the financial documents, Voorhees told Bepler that Anybill's tax returns for the last three years were still being prepared. (*Id.* ¶ 68.) Bepler responded that he would not accept the buyout offer without reviewing the company's financials, and Voorhees replied that they would be of little value and that he wanted Bepler to accept the offer. (*Id.* ¶¶ 77–78.) After the meeting, Voorhees revoked Bepler's access to Anybill's bank account and discharged or reassigned all employees who reported to Bepler. (*Id.* ¶¶ 80–81.)

On December 7, 2015, Bepler sued Anybill in the Superior Court for the District of Columbia to obtain Anybill's financial information. (*Id.* ¶ 85.) After substantial discovery, the court entered judgement in favor of Anybill, finding that "no rational fact-finder could find that, as of the time of the trial, [Anybill] had refused [Bepler's] demand to inspect the books and records to which he was entitled as a stockholder of Anybill." (ECF No. 73-2, Judgment in *Bepler v. Anybill Fin. Servs.*, No. 15-CABSLD-9434, ¶¶ 1–2.)

On December 15, 2016, the parties executed an agreement to toll the statute of limitations for fraud, misappropriation, conversion, breach of fiduciary duty, conspiracy and certain other

claims from December 15, 2016 to May 1, 2017. (Third Am. Compl. ¶ 197, Ex. A.) They later agreed to an extension until June 5, 2017. (*Id.*)

Bepler sued in Superior Court for the District of Columbia on June 6, 2017, asserting several D.C. common law claims: fraud (Count I), misappropriation (Count II), conversion (Count III), breach of fiduciary duty (Count IV), corporate waste (Count V), conspiracy to misappropriate funds (Count VI), and conspiracy to convert funds (Count VII), as well as two federal claims under RICO (Counts X and XI). He seeks damages and other equitable relief including a declaration that Voorhees breached his fiduciary duties and wasted Anybill's assets, disgorgement, and an independent audit of Anybill. (*Id.* at 40.) On September 13, 2017, Voorhees removed this action from Superior Court to this court. (ECF No. 1.)

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) for failure to state a claim "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the factual content allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plaintiff's factual allegations need not be "detailed," but "the Federal Rules demand more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678. While a court generally does not consider matters beyond the pleadings for a motion to dismiss, it may consider "the

facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]" *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119–20 (D.D.C.2011) (internal quotation marks and citations omitted); *see also Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.     ANALYSIS

### A. <u>RICO Claims</u>

To state a RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *W. Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001). To show a pattern of racketeering activity under RICO, a plaintiff must allege at least two predicate acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). "[T]hese predicate offenses are acts punishable under certain state and federal criminal laws, including mail and wire fraud." *Id.* (citing 18 U.S.C. § 1961(1)(B)). When, as here, RICO claims are premised on mail and wire fraud, the D.C. Circuit has observed that they "must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Id.* at 637 (internal citation and quotation omitted).

This case presents such a situation. Bepler's RICO allegations simply dress up his "ordinary business dispute," *id.*, as a RICO claim. He alleges a pattern of racketeering from the 2011 Transfers, the 2013 Transfers, and later attempts to conceal them. But these allegations state only a single scheme and injury—taking money from Anybill—where the only victims were Anybill and its shareholders. A plaintiff must plead more than a single scheme, a single

injury, and a few victims, to state a RICO claim. *See, e.g.*, *W. Assocs. Ltd. P'ship*, 235 F.3d at

633 (affirming dismissal of a RICO claim where plaintiff alleged a single scheme of fraudulent

bookkeeping entries over eight years, resulting in diminished value of a partnership); *Harpole*

*Architects, P.C. v. Barlow*, 668 F. Supp. 2d 68, 75 (D.D.C. 2009) (dismissing employer's RICO

claim against former bookkeeper alleged to have stolen funds from employer over three years).

Therefore, Bepler has failed to sufficiently plead RICO claims and the court will grant Voorhees'

motion to dismiss them (Counts X & XI).[4]

## B. **Federal Jurisdiction**

Defendants moved to dismiss the remaining D.C. common law claims pursuant to Federal

Rule of Civil Procedure 12(b)(6). But because the court is dismissing all the federal claims, it

declines to exercise jurisdiction over the D.C. common law claims. A court may decline to

exercise supplemental jurisdiction *sua sponte* when the plaintiff's predicate federal law claims

have been dismissed and there are no alternative means of establishing jurisdiction. 28 U.S.C. §

1367(c)(3); *see also Bello v. Howard University*, 898 F. Supp. 2d 213, 226 (D.D.C. 2012) (citing

*Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005)); *United Mine Workers v. Gibbs*,

383 U.S. 715, 726 (1966) (explaining that supplemental jurisdiction "is a doctrine of discretion,

not of plaintiff's right"). "[I]n the usual case in which all federal-law claims are dismissed

before trial, the balance of factors to be considered under the pendent jurisdiction doctrine —

judicial economy, convenience, fairness, and comity—will point toward declining to exercise

---

[4] It also appears Bepler's RICO claims based on the 2011 Transfers are untimely. RICO claims
are governed by a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff &*
*Assocs., Inc.*, 483 U.S. 143, 152 (1987). The statute of limitations for RICO claims begins to run
when a plaintiff discovers the injury, not when other elements of the claim are discovered.
*Rotella v. Wood*, 528 U.S. 549 (2000). Bepler discovered the alleged injuries in September
2011, and therefore the statute of limitations ran in September 2015.

jurisdiction over the remaining state-law claims." *Shekoyan*, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Because Plaintiff's predicate federal-law claims have been dismissed, the court will exercise its discretion and remand their D.C.-law claims to the Superior Court for the District of Columbia, from whence they came. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 414 (D.C. Cir. 2014) (noting that remand is preferable where the federal question is eliminated early on in a removed case).

## IV.    CONCLUSION

For the foregoing reasons, the court will GRANT in part Voorhees' motion to dismiss and REMAND the remaining D.C.-law claims. A corresponding Order will issue separately.

Date: April 10, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge